UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NICHOLAS SEALS,**

      **Plaintiff,**              **CIVIL ACTION NO. 10-cv-15054**

      v.                              **DISTRICT JUDGE VICTORIA A. ROBERTS**

**DEBRA SCUTT, et al.,**          **MAGISTRATE JUDGE MONA K. MAJZOUB**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Nicholas Seals filed this *pro se* prisoner civil rights action on December 21, 2010, pursuant to 42 U.S.C. § 1983, alleging that Defendants failed to provide him with medical care in violation of the Eighth Amendment to the United States Constitution. (Docket no. 1.) This matter comes before the Court on the only remaining Defendant, Dr. Vernon Stevenson, M.D.'s Motion for Summary Judgment. (Docket no. 94.) Plaintiff responded to Defendant Stevenson's Motion (docket no. 109), and Defendant Stevenson replied to Plaintiff's Response (docket no. 112). Also before the Court are Plaintiff's Motion for Summary Judgment (docket no. 108) and Motion for Expert to be Assigned to the Case Pursuant to Federal Rule of Civil Procedure 6(c) (docket no. 111).[1] This action has been referred to the undersigned for all pretrial purposes. (Docket no. 37.) The Court dispenses with oral argument on the motions pursuant to Eastern District of Michigan Local Rule 7.1(f) and issues this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] Plaintiff filed his Motion for Summary Judgment almost two months after the dispositive motion deadline in this matter without seeking leave of court, and it should therefore be stricken. Nevertheless, the undersigned will consider Plaintiff's Motion in this Report and Recommendation.

**I.     RECOMMENDATION**

For the reasons that follow, it is recommended that (1) Defendant Vernon Stevenson, M.D.'s Motion for Summary Judgment (docket no. 94) be **GRANTED**; (2) Plaintiff's Motion for Summary Judgment (docket no. 108) be **DENIED**; and (3) Plaintiff's Motion for Expert to be Assigned to the Case Pursuant to Federal Rule of Civil Procedure 6(c) (docket no. 111) be **DENIED** as moot.  Accordingly, it is recommended that this matter be dismissed in its entirety.

**II.    REPORT**

    **A.     Background**

Plaintiff filed his original complaint on December 21, 2010.  (Docket no. 1.)  A few months later, Plaintiff filed a Motion for Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a) on the grounds that he had failed to exhaust his available administrative remedies.  (Docket no. 23.)  District Judge Lawrence P. Zatkoff granted Plaintiff's motion on May 11, 2011, and dismissed the case without prejudice.  (Docket nos. 34 and 35.)  On January 14, 2013, Plaintiff filed a Motion to Amend his complaint.  (Docket no. 36.)  Shortly thereafter, Judge Zatkoff reopened the case and entered an order referring all pretrial matters to the undersigned.  (Docket no. 37.)  The undersigned granted Plaintiff's Motion to Amend on May 20, 2013 (docket no. 38), and Plaintiff filed his amended complaint on July 10, 2013 (docket no. 42).

In his amended complaint, Plaintiff claims that Defendant Stevenson was deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment.  (*See* docket no. 42.)  Specifically, Plaintiff claims that in "approximately mid 2008," Defendant Stevenson ignored Plaintiff's pleas for medical intervention concerning his chest pain and "inability to remain ambulatory without serious pain."  (Docket no. 42 ¶ 3.)  Plaintiff claims that Defendant

Stevenson assured him that testing would be performed, but it was not, and Plaintiff received no follow-up care. (*Id.*) Next, Plaintiff alleges that after a two-week hospitalization beginning March 13, 2009, during which his heart stopped several times, he was shocked by a defibrillator, he was revived six times, and he had two stents "placed into his anatomical vessel,"[2]

> Specialists at Allegiance [Hospital] prescribed several medications and medical instructions to Defendants, including but not limited to pain medication; blood thinners and weekly blood testing by [Michigan Department of Corrections (MDOC)] medical staff. Defendant Dr. Stevenson informed Plaintiff of the Specialist's mandates, but indicated no such instructions/mandates are available within the MDOC.

(*Id.* ¶ 5.)[3]

On October 9, 2013, Defendant Stevenson filed a Motion to Dismiss Plaintiff's claims against him on the basis that they were barred by the statute of limitations. (Docket no. 46.) In a June 30, 2014 Report and Recommendation, the undersigned recommended that Defendant Stevenson's Motion be denied, reasoning, for purposes of the Report and Recommendation, that the statute of limitations was tolled from May 11, 2011 to January 14, 2013, while Plaintiff was exhausting his administrative remedies. (Docket no. 55 at 1, 5-6.) The undersigned also recommended that Defendants Prison Health Services, Inc., Scutt, Gardon, Clement, Murphy, Upston, Neff, Edelman, Ives, Correctional Medical Services, Inc., and Aetna Insurance Company be dismissed from this action. (*Id.* at 1, 6-7.) Judge Zatkoff adopted the Report and Recommendation on July 31, 2014. (Docket no. 58.)

---

[2] Plaintiff's medical records as submitted by Defendant Stevenson indicate that Plaintiff suffered a heart attack on March 13, 2009. (*See* docket no. 98-11 at 3-4.)

[3] Plaintiff makes allegations against "Defendants" generally with regard to the medical care he received in October 2010, April 2011, and December 2012, but such general allegations fail, as they do not sufficiently show that Defendant Stevenson, or any of the thirteen other named Defendants, was personally involved in Plaintiff's medical care at that time. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). In fact, Defendant Stevenson asserts and has provided evidence to demonstrate that he was only involved in Plaintiff's medical care from December 2008 to March 2009, and from June 2009 to August 2010. (Docket no. 94 at 12-18; docket no. 98.)

Next, after making several attempts to effectuate service on Defendants Nibbelink and Weeks on behalf of Plaintiff, and exhausting all reasonable means in doing so, to no avail, the undersigned recommended that Defendant Nibbelink and Weeks be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m).  (Docket no. 85.)  District Judge Victoria A. Roberts adopted this recommendation on June 20, 2016.  (Docket no. 100.)  Thus, Defendant Stevenson is the only remaining defendant in this action.  Defendant Stevenson's Motion for Summary Judgment (docket no. 94), Plaintiff's Motion for Summary Judgment (docket no. 108), and Plaintiff's Motion for Expert to be Assigned to the Case Pursuant to Federal Rule of Civil Procedure 6(c) (docket no. 111) are currently pending before the Court.

**B.    Governing Law**

Defendant Stevenson and Plaintiff move for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Docket nos. 94 and 108.)  Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915. A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**C. Analysis**

Defendant Stevenson asserts that this matter should be dismissed in its entirety because (1) Plaintiff failed to timely exhaust his administrative remedies; (2) Plaintiff's claims are barred by the three-year statute of limitations; and (3) there is insufficient evidence for a reasonable trier of fact to conclude that Defendant Stevenson was deliberately indifferent to Plaintiff's serious medical needs under the Eighth Amendment. (Docket no. 94.) Plaintiff asserts that he is entitled to summary judgment in his favor because there is no genuine issue as to any material fact regarding his allegations that Defendant Stevenson ignored Plaintiff's pleas for medical intervention concerning his chest pain and inability to ambulate without serious pain in mid-2008 and refused to provide Plaintiff with proper medical care after his heart attack as ordered by the specialists at Allegiance Hospital. (Docket no. 108.)

To prevail on a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (citations omitted). There is no dispute that Defendant Stevenson is a person who was acting under color of state law. Thus, the only remaining issue under a § 1983 analysis is whether he deprived Plaintiff of a constitutional right.

Plaintiff asserts a violation of the Eighth Amendment's prohibition against cruel and unusual punishment. "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Horn by Parks v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citing *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)).

To support a claim of deliberate indifference under the Eighth Amendment, a Plaintiff must satisfy two components: an objective component, and a subjective component. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013) (citing *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant . . . acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*,

6

707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)).

### 1. The Objective Component

To satisfy the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). A sufficiently serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo Cnty.,* 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted).

Plaintiff alleges that he suffered from chest pain and an "inability to remain ambulatory without serious pain." (Docket no. 42 ¶ 3.) Indeed, "[c]ourts have regularly held that pain can be a 'sufficiently serious' medical need for purposes of a deliberate indifference claim." *Burton v. Kakani*, No. 09-10893, 2011 WL 3330370, at *4 (E.D. Mich. Aug. 3, 2011) (Battani, J.) (citing cases). Plaintiff also alleges that he was hospitalized on March 13, 2009, during which his heart stopped several times, he was shocked by a defibrillator, he was revived six times, and he had two stents "placed into his anatomical vessel;" essentially, Plaintiff suffered a heart attack. (Docket no. 42 ¶ 4.) Defendant Stevenson neither sets forth his position nor disputes Plaintiff's position regarding this component. In light of Plaintiff's allegations of pain and his ensuing heart attack, the undersigned finds, for purposes of the instant motions, that Plaintiff's condition constituted a serious medical need.

### 2. The Subjective Component

To satisfy the subjective component of a deliberate indifference claim and show that the defendant had a sufficiently culpable state of mind, a plaintiff must show that "'the official

knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (quoting *Harrison*, 539 F.3d at 518). The plaintiff need not prove, however, "that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.'" *Comstock*, 273 F.3d at 703 (quoting *Farmer*, 511 U.S. at 835). Instead, a plaintiff must show that (1) the defendant "subjectively perceived facts from which to infer substantial risk to the [plaintiff]," (2) the defendant "did in fact draw that inference," and (3) the defendant "then disregarded that risk." *Quigley*, 707 F.3d at 681 (citations omitted).

As discussed in detail above, Plaintiff alleges that (1) Defendant Stevenson ignored his pleas for medical intervention in "approximately mid 2008," and (2) sometime after Plaintiff's March 13, 2009 heart attack, Defendant Stevenson told Plaintiff that the prescribed medications and medical instructions mandated by the hospital's specialists were not available within the MDOC. (Docket no. 42 at ¶¶ 3, 5.) Defendant Stevenson argues that "there is insufficient evidence for a reasonable person to conclude that [he] was ever aware of any serious medical need concerning [Plaintiff] that was not treated concerning anticoagulation therapy or nephrotic syndrome." (Docket no. 94 at 26.) Defendant Stevenson explains that he treated Plaintiff from December 2008 through mid-March 2009, that he was not involved in Plaintiff's medical care from the time of Plaintiff's heart attack through May 2009, and that he resumed his treatment of Plaintiff in June 2009, which continued through August 2010. (*Id.* at 12-18, 26-27.) Defendant Stevenson then asserts that Plaintiff received adequate medical care at all times that Defendant Stevenson was involved with Plaintiff's care. (*Id.* at 27.) To support this assertion, Defendant Stevenson submitted the (unsigned) expert report of John Bonema, M.D., who opined that Defendant Stevenson provided reasonable and appropriate medical care to Plaintiff during all

8

dates at issue where he was involved as Plaintiff's primary care physician. (Docket no. 94-6 at 3.)

Defendant Stevenson also submitted under seal approximately 800 pages of Plaintiff's medical records as well as a chronological summary of those records to further support his argument. (Docket no. 98.) The medical evidence submitted indicates that on November 21, 2007, Plaintiff presented for intake at the MDOC with a diagnosis of nephrotic syndrome and hypertension, as well as a history of an arterial bypass in his right leg to prevent venous thromboembolism. (Docket no. 98-5 at 35-36.) From November 2007 to December 2008, Plaintiff received extensive treatment for his condition from several doctors, physicians' assistants, and nurse practitioners. (Docket no. 98-16 at 2-6.) According to the records, Plaintiff saw Defendant Stevenson for the first time on December 1, 2008, at which time Defendant Stevenson submitted a consultation request for Plaintiff to be seen by nephrologist Dr. Deon Middlebrook. (Docket no. 98-5 at 38-39.) On December 9, 2008, Defendant Stevenson conducted a physical exam of Plaintiff regarding complaints of abdominal pain and vomiting. (*Id.* at 40-41.) At that time, Defendant Stevenson found Plaintiff's general appearance, head, neck, eyes, nose, throat, respiratory system, cardiovascular system, musculoskeletal system, and lymphatic system to be normal, and he assessed Plaintiff with a low-grade fever with abdominal pain and vomiting, most probably consistent with a gastrointestinal virus or gastritis. (*Id.* at 40.) Defendant Stevenson noted that he had reviewed all of Plaintiff's medications and health conditions, and he then ordered close monitoring in health care, ten milligrams of Compazine, and two liters of saline. (*Id.*) On December 23, 2008, Defendant Stevenson ordered that a comprehensive profile and a urinalysis be completed on January 8, 2009, and that Plaintiff

continue on the generic form of Neoral.  (Docket no. 98-7 at 55.)  The comprehensive panel and urinalysis were completed on January 8, 2009 and again on February 2, 2009.  (*Id*. at 53-54.)

Plaintiff's medical records also indicate that Defendant Stevenson examined Plaintiff as part of the Cardiovascular Chronic Care Clinic on February 4, 2009.  (Docket no. 98-7 at 49-52.)  At that visit, Defendant Stevenson noted that Plaintiff reported no chest pain, shortness of breath, dizziness, palpitations, edema, or leg cramps, among other things, but that he did complain of hip pain, possibly related to his shoes, which worsened with walking.  (*Id*. at 52.)  Defendant Stevenson then conducted a neurological exam, cardiopulmonary exam, and an abdominal exam, and he found that Plaintiff's condition was unchanged and that his hypertension was fairly controlled for a person with nephrotic syndrome.  (*Id*. at 50-51.)  Defendant Stevenson issued a plan to control Plaintiff's blood pressure within the normal limits to assist in the continued protection of his kidneys.  (*Id*. at 50.)  He also prescribed Plaintiff additional medications of Vasotec, Lasix, and Vitamin D.  (*Id*.)  On February 25, 2009, nephrologist Dr. Middlebrook consulted with Plaintiff as ordered by Defendant Stevenson in December 2008.  (Docket no. 98-7 at 45.)  Dr. Middlebrook noted that Plaintiff was feeling well, noted Plaintiff's lab results and vital signs, decided to continue Plaintiff on Neoral, and requested that Plaintiff have a 24-hour urinalysis for protein and creatinine clearance and return to the clinic in two months.  (*Id*.)

According to Plaintiff's medical records, Plaintiff suffered a heart attack on March 13, 2009.  (Docket no. 98-9 at 2.)  Plaintiff was transported to Allegiance Hospital where Dr. Bischan Hassunizadeh, M.D. performed heart surgery on Plaintiff.  (Docket no. 98-11 at 7-9.)  Dr. Hassunizadeh discharged Plaintiff from the hospital on March 16, 2009 under instructions that he take Zocor, Plavix, Aspirin, Lopressor, and Vasotec daily and under recommendations that he receive maximal medical therapy, follow up at the prison clinic in two weeks, and abstain

from heavy lifting. (Docket no. 98-11 at 3-5.) Plaintiff was discharged to the MDOC's Duane Waters Health Center, upon which he was examined by Dr. Medhi Almasi. (Docket no. 98-7 at 41.) Dr. Almasi checked Plaintiff's vital signs and noted that Plaintiff had no chest pain and no shortness of breath; he then ordered the aforementioned medications for Plaintiff. (*Id*.; docket no. 98-9 at 9.) Progress notes dated March 17, 2009 indicate that Plaintiff received information on myocardial infarctions, shortness of breath, chest pain, and his medications; they note that Plaintiff's condition was stable; and they inform that Plaintiff was discharged to the correctional facility and that Plaintiff's medications would be delivered to the facility by an officer. (Docket no. 98-9 at 6.) Plaintiff had a follow-up appointment with Dr. Hassunizadeh on April 30, 2009, who continued to recommend maximal medical therapy. (Docket no. 98-7 at 20.) He also recommended that Plaintiff see a nephrologist within two weeks to discuss the effect of the cardiac drugs on his nephrotic syndrome. (*Id*.) Dr. Hassunizadeh found, at that point, that Plaintiff was cardiovascularly stable. (*Id*.)

The medical evidence further indicates that Plaintiff was transported to Allegiance Hospital again on May 23, 2009 with complaints of chest pain. (Docket no. 98-9 at 34-35; docket no. 98-10 at 1-2.) According to the records, chest x-rays, CT scans, and a stress test were negative except for a question of mild left ventricular dilation, and a heart attack was ruled out. (Docket no. 98-10 at 5-12, 23.) Plaintiff was discharged to the Duane Waters Health Center on May 27, 2009 in stable condition with instructions to add Cozaar and Coumadin to his daily medications and to follow up with a nephrologist. (*Id*. at 1-2.) On June 1, 2009, Plaintiff was discharged to the correctional facility in stable condition with prescriptions for twelve different medications, including Cozaar and Coumadin. (Docket no. 98-11 at 35; docket no. 98-12 at 1, 13.) Plaintiff was seen by a nephrologist on June 5, 2009. (Docket no. 98-8 at 10-11.)

11

Plaintiff's medical records show that Defendant Stevenson resumed care of Plaintiff on June 4, 2009 with a physical examination as a follow up to Plaintiff's May 2009 hospitalization. (Docket no. 98-8 at 8-9.) Defendant Stevenson observed that Plaintiff was not short of breath, was not retaining significant fluid, had no chest or abdominal pain, and that he was currently stable. (*Id*.) He recommended that Plaintiff continue his medications, and he submitted a nephrology consultation request on behalf of Plaintiff. (*Id*. at 5-6, 8.) The medical evidence further demonstrates that Defendant Stevenson continued to treat Plaintiff through August of 2010 by conducting physical exams, monitoring Plaintiff's laboratory results, particularly with regard to coagulation, and adjusting Plaintiff's medications. (Docket no. 98-16 at 15; docket no. 98-17 at 1-7.)

Here, the voluminous medical evidence submitted by Defendant Stevenson overwhelmingly shows that Plaintiff has received frequent and extensive medical care from numerous medical providers, including Defendant Stevenson, since his intake into the MDOC. This evidence, particularly that which is summarized above, directly contradicts Plaintiff's allegations against Defendant Stevenson. For example, Plaintiff alleges that in approximately mid-2008, Defendant Stevenson ignored Plaintiff's pleas for medical intervention concerning chest pain and ambulatory pain, Defendant Stevenson failed to provide Plaintiff with follow-up care, and the testing that Defendant Stevenson promised was never performed. (Docket no. 42 ¶ 3.) Conversely, the evidence shows that Defendant Stevenson treated Plaintiff for the first time in December of 2008 based on complaints of abdominal pain and vomiting and that he ordered close monitoring in health care and comprehensive lab profiles, which were completed in early 2009. (Docket no. 98-5 at 38-41; docket no. 98-7 at 53-55.) With regard to Plaintiff's allegation that Defendant Stevenson told Plaintiff that the post-heart-attack care ordered by the specialists

at Allegiance Hospital was not available within the MDOC, it is, again, contrary to the evidence. Instead, the evidence suggests that Defendant Stevenson was not involved in Plaintiff's medical care for approximately three months following Plaintiff's heart attack. Furthermore, the evidence shows that the medical providers who were involved with Plaintiff's care in March and April of 2009 properly followed the discharge instructions mandated by the doctors at Allegiance Hospital. Plaintiff has not, either through his Motion for Summary Judgment or through his Response to Defendant Stevenson's Motion, come forward with any significant probative evidence to support his allegations, to contradict the evidence submitted by Defendant Stevenson, or to create a genuine issue of material fact for trial. Based on the evidence provided, Plaintiff cannot demonstrate that Defendant Stevenson knew of and disregarded a substantial risk of serious harm to Plaintiff through the denial of medical care.

"In evaluating a deliberate indifference claim, '[w]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment.'" *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas,* 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). Differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Westlake*, 537 F.2d at 860 n.5 ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). "When a prisoner grounds a constitutional violation on inadequate medical treatment, his claim is viable only if he shows that the treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Burton v. Kakani*, 514 F. App'x 577, 579 (6th Cir. 2013) (quoting *Alspaugh,* 643 F.3d at 169).

13

Ultimately, the court must consider the wide discretion allowed to prison officials in their treatment of prisoners under authorized medical procedures. *See Westlake*, 537 F.2d at 860. Thus, to the extent that Plaintiff alleges that Defendant Stevenson denied Plaintiff *proper* medical care, such an allegation does not rise to the level of deliberate indifference.

Plaintiff has failed to show that Defendant Stevenson acted unconstitutionally, and where there is no constitutional violation, "the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment . . . ." *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007). Accordingly, Defendant Stevenson's Motion for Summary Judgment should be granted, and Plaintiff's Motion for Summary Judgment should be denied.[4]

### D. Conclusion

For the reasons stated herein, it is recommended that the court (1) **GRANT** Defendant Vernon Stevenson, M.D.'s Motion for Summary Judgment (docket no. 94); (2) **DENY** Plaintiff's Motion for Summary Judgment (docket no. 108); and (3) **DENY** as moot Plaintiff's Motion for Expert to be Assigned to the Case Pursuant to Federal Rule of Civil Procedure 6(c) (docket no. 111). Accordingly, it is recommended that the court dismiss this matter in its entirety.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). Filing of objections which

---

[4] Because Defendant Stevenson should be granted summary judgment on the merits, the undersigned declines to address Defendant's arguments regarding Plaintiff's exhaustion of his administrative remedies or the statute of limitations.

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated:  August 23, 2016           s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated:  August 23, 2016           s/ Lisa C. Bartlett
                                  Case Manager

15